Herson Roberto GRANADOS,
Petitioner

v.

ATTORNEY GENERAL UNITED
STATES OF AMERICA,
Respondent

Nos. 15-3638, 16-1736

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit L.A.R.
34.1(a) January 18, 2017

(Opinion Filed: January 26, 2017)

Matthew J. Archambeault, Esq., Corpuz & Archambeault, Philadelphia, PA, for Petitioner

Jesse L. Busen, Esq., Thomas W. Hussey, Esq., Loretta Lynch, Esq., Kohsei Ugumori, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent

Before: FISHER, HARDIMAN, and GREENAWAY, JR., Circuit Judges.

OPINION *

HARDIMAN, Circuit Judge.

Herson Roberto Granados petitions for review of an order of the Board of Immigration Appeals (BIA) denying his application for protection under the United Nations Convention Against Torture (CAT). For the reasons that follow, we will dismiss the petition for lack of jurisdiction.

I

Granados, a native and citizen of El Salvador, entered the United States without inspection in 2000. In 2010, he was convicted in New Jersey of robbery under N.J. Stat. Ann. § 2C:15–1, resulting in a sentence of four years' imprisonment. The Department of Homeland Security then sought his removal from the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), as an inadmissible person who entered the United States without admission or parole, and 8 U.S.C. § 1182(a)(2)(A)(i)(I), as an inadmissible person convicted of a crime involving moral turpitude. Granados conceded removability on the first charge, and an Immigration Judge (IJ) sustained the second charge and found him removable.

Granados sought deferral of removal under the CAT, 8 C.F.R. § 1208.17, claiming that if he were returned to El Salvador, he would be tortured by MS-13 gang members because he is a former MS-13 member with visible gang tattoos.[1] Specifically, he claimed that he fled El Salvador after he ceased participating in the gang and received threats of torture and death by MS-13 members. After settling in New Jersey, Granados encountered members of MS-13 and began tattooing his body with MS-13 symbols to prove his loyalty. He later moved to another part of New Jersey and stopped associating with MS-13 members. While in prison on his robbery conviction, however, he obtained more gang tattoos and continued to associate with gang members for his own safety. Granados testified that he is no longer a member of MS-13.

On July 1, 2015, the IJ denied Granados's CAT claim and ordered him removed to El Salvador. The IJ determined that his robbery conviction was both a crime of moral turpitude and a particularly serious crime, and that he was therefore ineligible for withholding of removal under the CAT. See 8 U.S.C. § 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2). The IJ further concluded that, although Granados was eligible to apply for deferral of removal under the CAT, he had not demonstrated that such relief was warranted.

The IJ found Granados's testimony credible and concluded that it was more likely than not that he would be subjected to torture by MS-13 members if returned to El Salvador. The IJ noted several threats to kill, beat, or stab Granados and an expert's report stating that gangs will violently punish someone who flees. Nevertheless, the IJ concluded: "while [Granados] is threatened with likely torture by the MS-13 in El Salvador, he is ineligible for deferral of removal under the CAT because he has failed to demonstrate public officials' acquiescence or consent to his torture." A.R. 44. Specifically, the IJ found that "the Salvadoran police are aware of gang violence constituting torture and are taking meaningful steps to combat it," noting that Granados had presented evidence

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

1. Although Granados originally filed for asylum and withholding of removal, he later withdrew those applications during removal proceedings and asserted through counsel that he was only seeking CAT protection.

of "the Salvadoran police's escalating campaign against gangs." A.R. 43.

Granados appealed to the BIA, challenging only the denial of his deferral of removal. On October 27, 2015, the BIA dismissed the appeal. It found no clear error in the IJ's determination that Granados failed to meet his burden of proof to show that, if returned to El Salvador, he would experience torture "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." A.R. 3 (quoting A.R. 9). Granados filed a timely petition for review.[2]

## II

The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a). Although we may not review a final order of removal against a petitioner who is removable for committing a criminal offense listed in 8 U.S.C. § 1182(a)(2), which includes crimes involving moral turpitude, we retain jurisdiction to review colorable constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(C)–(D). Where the BIA's decision "invokes specific aspects of the IJ's analysis and factfinding in support of the BIA's conclusions" as it did here, we review the decisions of both the IJ and the BIA. *Voci v. Gonzales*, 409 F.3d 607, 613 (3d Cir. 2005).

Granados first argues that the BIA and IJ failed to consider evidence relating to his claim that the police would not protect him as a former gang member. Granados is correct that "all evidence relevant to the possibility of future torture" must be considered in reviewing a CAT application. 8 C.F.R. § 1208.16(c)(3). But the record here shows that the IJ and BIA considered evidence relating to the El Salvadoran government's treatment of Granados and other gang members, yet did not find that the police would consent to or acquiesce in any harm inflicted on Granados or fail to protect him. In particular, the IJ considered Granados's testimony and other evidence of the police's treatment of gang members—including State Department, expert, and media reports—but found that Salvadoran officials were taking meaningful steps to address gang violence. Moreover, the IJ found that Granados had not "provided evidence that it is in fact the policy or practice of the police to deny protection to *former* gang members," and the BIA held that this finding was not clearly erroneous. A.R. 4, 43 (emphasis added). Indeed, Granados concedes on appeal that "no evidence was presented demonstrating that the Salvadoran police have a policy or practice of acquiescence." Granados Br. 19. "It is therefore apparent that [Granados]'s real argument is *not* that relevant evidence was ignored, but rather that the IJ incorrectly weighed evidence in making factual determinations.... [W]e lack jurisdiction to consider such an argument." *Green v. Att'y Gen.*, 694 F.3d 503, 508 (3d Cir. 2012).

Granados also argues that the BIA failed to consider evidence that he was tortured in the past, which is relevant to the possibility of future torture. However, both the BIA and IJ found that Granados will likely be targeted for harm, but not by or with the consent or acquiescence of the Salvadoran government. Again, we lack jurisdiction to review this factual conclusion. *See id.* at 507 ("[W]e lack jurisdiction to

---

**2.** Granados later filed a motion to reopen his removal proceedings based on changed country conditions, which the BIA denied as untimely. Granados then filed a second petition for review, which was consolidated with his prior petition. In his brief on appeal, Granados withdraws his second petition for review and proceeds only on his initial petition.

consider Green's argument that the IJ erred in determining that the Jamaican government would not consent to or acquiesce in the Shower Posse's actions.").

■ Finally, Granados argues that the BIA and IJ applied an incorrect legal standard for evaluating Granados's claims. Specifically, he claims that the BIA and IJ imposed a "stringent and inappropriate" standard of acquiescence upon him "by requiring him to demonstrate that it is the policy or practice of the police to deny protection to former gang members." Granados Br. 16 (internal quotation marks omitted). As an initial matter, Granados failed to raise this argument before the BIA and has therefore failed to exhaust this claim. *See* 8 U.S.C. § 1252(d)(1); *Castro v. Att'y Gen.*, 671 F.3d 356, 365 (3d Cir. 2012) (requiring administrative exhaustion as a jurisdictional prerequisite). In any event, neither the BIA nor the IJ required Granados to provide evidence of such policy or practice as a matter of law. Instead, they merely responded to Granados's claim that the police would not protect him as a former gang member by noting that he failed to present evidence of any policy or practice of such selective law enforcement.

In sum, Granados has raised what amounts to a disagreement with the agency's factual determination that he failed to sufficiently demonstrate that public officials in El Salvador would likely consent to or acquiesce in his torture, and this argument is unreviewable. *See Green*, 694 F.3d at 507; *Pieschacon–Villegas v. Att'y Gen.*, 671 F.3d 303, 309 (3d Cir. 2011). Accordingly, we will dismiss the petition for lack of jurisdiction.